# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Ervin J. Marshall, Jr.,**

    **Plaintiff,**

v.                                                                                      Case No. 18-cv-2385-JWL

**BNSF Railway Co.,**

    **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Ervin J. Marshall, Jr. filed this lawsuit against his former employer, BNSF Railway Company, alleging discrimination, retaliation, harassment and constructive discharge in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. After resolving defendant's motion for summary judgment, three claims remain for trial—plaintiff's claim that his August 19, 2016 decision to retire constituted a constructive discharge based on his age; plaintiff's claim that he was subjected to age-based working conditions so intolerable that it resulted in plaintiff's constructive discharge; and plaintiff's claim that his August 19, 2016 decision to retire constituted a constructive discharge in retaliation for his reports of age discrimination and harassment. This matter is presently before the court on the parties' motions in limine (docs. 65, 66). As set forth in more detail below, those motions are granted in part, denied in part, and retained under advisement in part.

As a threshold matter, several of the issues raised by both parties are unopposed by the other party and, accordingly, each of those issues may be granted as unopposed. Specifically,

defendant's Motion in Limine A, F and G and plaintiff's Motion in Limine Nos. 1, 3, 4, 8, 9, 12, 13, 14 and 16. The court turns, then, to those issues that are disputed by the parties.

*Evidence of Lost Wages (Defendant's Motion in Limine B and C)*

Defendant seeks to exclude all evidence of lost wages based on plaintiff's admission that he has made no effort to secure alternative employment since leaving the railroad. It is defendant's burden to establish that plaintiff did not exercise reasonable efforts to mitigate damages. *See McClure v. Independent Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000). The court cannot conclude on this record, as a matter of law, that plaintiff's failure to seek alternative employment precludes an award of lost wages. Plaintiff indicates that the evidence will demonstrate that any mitigation efforts on his part would have been futile in light of his age, his unique position at the railroad and his seniority level at the railroad, coupled with the fact that he was precluded from seeking employment at any railroad employer by accepting retirement benefits. *See Walsh v. Scarsdale Union Free Sch. Dist.*, 2019 WL 6789581, at *6 (S.D.N.Y. 2019) (collecting cases discussing that a plaintiff's age and seniority level are pertinent factors in whether efforts to find a substantially equivalent position would have been futile). This remains an issue of fact at this juncture.

Defendant next asserts that, to the extent evidence of lost wages is permitted, the court should offset those wages by the amount that plaintiff has received in retirement benefits.[1]

---

[1] Defendant asserts that any claim for lost wages should be calculated based on plaintiff's hourly rate as a union employee as opposed to his wages and benefits as a salaried employee. Plaintiff asserts that his pay remained the same when he transferred from his salaried position to an hourly

2

Defendant does not contend that such benefits must be deducted from a damages award as a matter of law and, in fact, defendant recognizes that such benefits under some circumstances may be considered a collateral source that should not be deducted. *See, e.g., EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 149-50 (4th Cir. 2017) (discussing circumstances under which employer-provided benefit may be treated as collateral). Nonetheless, defendant argues that an offset is appropriate because plaintiff, in response to an interrogatory, calculated his lost wages by reducing that number by the amount he has received in retirement benefits. According to defendant, plaintiff should be "held" to the calculation that he performed in that response. The court rejects this argument. While plaintiff's calculations in the interrogatory response included a deduction for retirement benefits, plaintiff's claim for lost wages in the pretrial order (filed several months after the interrogatory response) contains no such limitation. Defendant did not object to that claim as inconsistent with the prior interrogatory response or as impermissibly expanding the scope of the claim. The court, then, will not limit plaintiff's claim to his interrogatory response. To the extent plaintiff obtains a verdict and an award of lost wages, defendant may file a post-trial motion asserting that retirement benefits should be offset as a matter of law, if appropriate.[2]

*Evidence of Compensatory Damages and Punitive Damages (Defendant's Motion in Limine C)*

Defendant seeks to exclude any evidence relating to compensatory or punitive damages on the grounds that such damages are unavailable under the ADEA. Plaintiff concedes that such

---

position such that this issue has no bearing on plaintiff's claim for lost wages. To the extent defendant disputes plaintiff's characterization of the evidence, this issue must be resolved at trial.
[2] Plaintiff contends that defendant has not preserved its setoff argument in the pretrial order. This argument may be reasserted in response to any post-trial motion filed by defendant.

damages are not available for his ADEA discrimination claims, *see Bruno v. W. Elec. Co.*, 829 F.2d 957, 967 (10th Cir. 1987) (punitive damages not available under the ADEA in light of ADEA's liquidated damages provision); *Villescas v. Abraham*, 311 F.3d 1253, 1259 (10th Cir. 2002) (noting that it is established law in Tenth Circuit that damages for emotional distress are not available under the ADEA), but asserts that, at a minimum, it is an open question whether such damages are available in the context of his ADEA retaliation claim. As explained below, the court grants defendant's motion on this issue. No evidence of emotional distress or evidence pertaining to punitive damages will be permitted at trial.[3]

It should be noted that neither party has cited to the court any cases that address whether compensatory and punitive damages are available in an ADEA retaliation case. Defendant cites to one District of Kansas case, *Oglesby v. Hy-Vee, Inc*., 402 F. Supp. 2d 1296 (D. Kan. 2005), in which the court granted summary judgment in favor of the defendant on an ADEA harassment claim because plaintiff suffered no economic loss as a result of the alleged harassment and could not recover compensatory damages on that claim—significantly, a discrimination claim. *Oglesby*, then, is not helpful to the court on the issue of whether such damages are available in an ADEA retaliation case. Plaintiff, on the other hand, directs the court to *Villescas* for the principle that the

---

[3] Plaintiff suggests that the court should not reach this issue because defendant did not raise the issue on summary judgment and did not preserve it in the pretrial order. Defendant's argument that certain remedies are simply not available under the ADEA is not an affirmative defense that it was required to preserve in the pretrial order. *See Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) ("Claims, issues, defenses, or theories of damages not included in the pretrial order are waived.") (quoting *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276–77 (10th Cir. 2006)). And while it is certainly debatable whether a limine motion was the most appropriate vehicle for teeing up this issue (but not at all debatable that defendant should have put more effort into its argument), nonetheless the issue is one that concerns whether certain evidence should be admitted at trial such that the court finds that resolving the issue now is appropriate.

Circuit expressly left open the question of whether emotional distress damages are available in a private sector ADEA retaliation case, *see Villescas*, 311 F.3d at 1261 ("We, of course, express no opinion with respect to whether compensation for emotional distress would be available in a private sector retaliation claim under § 626(b)."), but otherwise cites only to Title VII retaliation cases based on the tenuous argument that ADEA retaliation claims should be "evaluated the same way."

In analyzing this issue, the court begins with the statutory framework of the ADEA. The ADEA prohibits discrimination against an employee based on age and prohibits retaliation against an employee who has complained of age discrimination. 29 U.S.C. §§ 623(a), 623(d). While those substantive provisions of the ADEA are patterned on Title VII, the ADEA's remedial provisions are based on part of the Fair Labor Standards Act of 1938 (FLSA), see 29 U.S.C. § 216(b), subject to certain modifications and limitations. *See Villescas*, 311 F.3d at 1257; 29 U.S.C. § 626(b). In a private-sector ADEA suit, the district court is authorized to afford "such legal or equitable relief as may be appropriate to effectuate the purposes of" the ADEA. *Villescas*, 311 F.3d at 1257; 29 U.S.C. § 626(b) and (c). That relief may include "without limitation" judgments compelling reinstatement, backpay, payment of wages owed, injunctive relief, declaratory judgment, attorney's fees, and an additional equal amount as liquidated damages in cases of willful violations. 29 U.S.C. § 216(b). In addition, the remedies section of the FLSA, § 216(b), incorporated into the ADEA, at 29 U.S.C. § 626(b), specifically refers to the anti-retaliation provision of the FLSA and states that that any employer who violates that subsection "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of" that specific section. 29 U.S.C. § 216(b). *Villescas*, 311 F.3d at 1257. Significantly, these provisions

5

authorizing "legal relief" and the anti-retaliation clause have been part of the ADEA since its inception in 1967. *See Goico v. Boeing Co.,* 347 F. Supp. 2d 986, 994-95 (D. Kan. 2004) (citing 29 U.S.C. § 626 (1970)).

Although the ADEA's authorization to grant "such legal . . . relief as may be appropriate" could have been "broadly interpreted to include tort-type damages for mental anguish and punitive damages, an overwhelming majority of courts—including the Tenth Circuit—have long held that such is not the case." *Id.* at 995 (citing *Bruno v. Western Elec. Co.*, 829 F.2d 957, 966 (10th Cir.1987) and other cases reaching the same conclusion). The Seventh Circuit, however, has carved out an exception for ADEA retaliation cases. By way of background, in *Travis v. Gary Community Mental Health Center*, 921 F.2d 108 (7th Cir. 1990), the Seventh Circuit found that a 1977 amendment to the FLSA (which added the separate remedy provision for retaliation claims using language essentially identical to the "appropriate legal relief" provision found in § 626(b) of the ADEA) changed the FLSA to now permit a plaintiff to recover punitive damages and compensation for emotional distress on an FLSA retaliation claim. In reaching that decision, the Seventh Circuit reasoned:

> Appropriate legal relief includes damages. Congress could limit these damages, but the 1977 amendment does away with the old limitations without establishing new ones. Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge.

*Id.* at 112. In a subsequent case addressing whether the ADEA authorized compensatory and punitive damages in discrimination cases, the Seventh Circuit held that it did not but cited to *Travis* as controlling authority for an "exception" making such damages available in FLSA and, by extension, ADEA retaliation cases. *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279,

6

283-84 (7th Cir. 1993). *Moskowitz*, however, added no substantive holding or extensive reasoning on the issue and in fact its statement that such damages are available in ADEA retaliation cases is mere dicta. *See Villescas*, 311 F.3d at 1259.

The Fifth Circuit has squarely rejected *Moskowitz*'s suggestion that such damages are available in ADEA retaliation cases. In *Vaughan v. Anderson Regional Medical Center*, 849 F.3d 588 (5th Cir. 2017), the Fifth Circuit held that neither emotional distress damages nor punitive damages are available for ADEA retaliation claims. In doing so, the Circuit emphasized that the 1977 amendments to the remedies provided for retaliation claims under the FLSA were identical to those already provided in the ADEA—language that had already been construed as prohibiting compensatory and punitive damages. *See id.* at 592. The Fifth Circuit found the *Moskowitz* opinion "unpersuasive," in large part because the *Moskowitz* court suggested that the 1977 FLSA amendments enlarged the remedies for ADEA retaliation claims despite the fact that the ADEA already permitted retaliation claims before the 1977 FLSA amendments and, in fact, appeared to have supplied the 1977 FLSA's remedial text. *See id.* at 593 & n.6. As Judge Brown of this District explained in assessing the implication of the 1977 amendments to the FLSA, "the more reasonable interpretation would appear to be that Congress understood the limited remedies available under the ADEA retaliation provision and intended to adopt the same standards for FLSA retaliation claims." *Goico*, 347 F. Supp. 2d at 996-97. The few district courts that have analyzed the issue outside the Seventh Circuit have rejected *Moskowitz*. See Middlebrooks v. Teva Pharmaceuticals USA, Inc., 2019 WL 438092, at *20 (E.D. Penn. Feb. 4, 2019) (punitive damages not available for ADEA retaliation); *See Karlo v. Pittsburgh Glass Works, LLC*, 2016 WL 69651, at *3 (W.D. Penn. Jan. 6, 2016) (ADEA "does not countenance claims for punitive

7

damages in retaliation claims"); *Sellers v. Deere & Co.*, 2013 WL 595900, at *4-5 (N.D. Iowa Feb. 14, 2013) (predicting that Eighth Circuit would conclude that emotional distress and punitive damages are not recoverable for ADEA retaliation claims); *Goico*, 347 F. Supp. 2d at 997.

Ultimately, this court believes that the Tenth Circuit, if faced with the issue, would find that neither punitive damages nor emotional distress damages are available for ADEA retaliation claims. With respect to punitive damages, the Circuit's rationale in *Bruno* would apply with full force to ADEA retaliation claims—that is, the availability of liquidated damages for an ADEA retaliation claim serves the same purpose that would be served by providing punitive damages and, thus, would constitute an impermissible double recovery. *See Bruno*, 829 F.2d at 957, 967 (10th Cir. 1984) (Congress could not have intended plaintiffs to recover both liquidated damages and punitive damages where purpose of both is to punish those who engage in willful violations). With respect to emotional distress damages, the Circuit's language in Bruno is also instructive:

> [P]recluding punitive damages facilitates the reconciliation process provided for under the ADEA. The broad purpose of the ADEA is to insure that older individuals who desire work will not be denied employment. In addition, prior to any court action on an ADEA claim, the plaintiff and his employer must go through a reconciliation process carried out by the EEOC. Through this process the agency can obtain efficient solutions to problems of age discrimination without resort to litigation. In agency proceedings, punitive damages are not available; thus, an ADEA plaintiff who may be able to recover punitive damages in a court action would be less inclined to seek reconciliation at the agency level. In fact, he might avoid contractual claims and seek to thwart reconciliation in order to reach the courts. If punitive damages are not available, plaintiffs will more likely seek contractual rights and more willingly participate in agency reconciliation efforts. We therefore conclude that punitive damages are not available under the ADEA.

*Id.* (citations omitted). While the Circuit in *Bruno* focused solely on the availability of punitive damages under the ADEA, its rationale clearly extends to the availability of emotional distress damages regardless of whether the claim is a discrimination claim or a retaliation claim. Indeed,

8

at least one other court has recognized that emotional distress damages are unavailable for ADEA claims, including retaliation claims, because such damages would impede the ADEA's unique administrative conciliation process. *See Randolph v. ADT Security Servs., Inc.*, 2012 WL 2234362, at *6-7 (D. Md. June 14, 2012).

For the foregoing reasons, the court is not persuaded that the 1977 amendments to the FLSA expanded the available remedies for an ADEA retaliation claim and believes that the Circuit would so hold. Thus, the court holds that compensatory and punitive damages are not recoverable for plaintiff's ADEA retaliation claim and that no evidence of such damages may be presented at trial.

*Evidence of Future Economic Loss (Defendant's Motion in Limine H)*

Defendant seeks to exclude evidence of future economic losses because front pay is an equitable remedy determined by the court. Plaintiff concedes that any front pay award will be determined by the court but asserts nonetheless that he should be permitted to introduce such evidence and that the court may rely on that evidence in formulating its award. Defendant's motion is granted on this issue to the extent plaintiff seeks to introduce evidence concerning a dollar amount for future losses. Of course, some factual issues, such as whether plaintiff sufficiently mitigated his damages, will be pertinent to both a back pay award and a front pay award and evidence on those factual issues will necessarily be presented to the jury. *See Hubbard v. Jefferson County Board of County Commr's*, 2018 WL 2976737, at *1 (D. Kan. 2018). In that circumstance, the court would be bound by the jury's determinations of fact in formulating any award for front pay. *See id.* (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955,

965 (10th Cir. 2002)). For the parties' planning purposes, the court notes that it anticipates holding a brief evidentiary hearing concerning plaintiff's claim for equitable relief in the form of front pay while the jury is deliberating in this case.

*Remaining Issues*

In his Motion in Limine No. 2, plaintiff seeks to preclude evidence of "non-discrimination against non-parties" and specifically seeks to exclude testimony from current or former employees opining that they did not experience age discrimination or retaliation. The motion is granted in part and denied in part. Defendant may elicit testimony from defendant's managers concerning defendant's equal treatment of employees regardless of age or other protected status. Moreover, to the extent that plaintiff has designated the deposition testimony of Bruce Stuff, who testified to his belief that he was not targeted because of his age, the motion is denied.

Plaintiff, in his Motion in Limine No. 5, seeks to exclude evidence of the administrative proceedings and determinations before the Kansas Human Rights Commission and the EEOC. Defendant does not oppose the motion except the extent it may argue at trial that plaintiff's constructive discharge claim is untimely and, if so, would present evidence of the date that plaintiff initiated the administrative process. The motion is granted on this issue, as the court would decide whether the constructive discharge claim is timely based on the jury's resolution of the factual issue of whether and when plaintiff was subjected to a constructive discharge. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174-75 (10th Cir. 1998) (trial court resolves equitable issues such as whether claims are time barred).

In his Motion in Limine No. 6, plaintiff seeks to exclude any witnesses who were not listed in defendant's Rule 26 disclosures. Defendant in its response notes that two witnesses, Randall Planchon and Ken Russell, were not listed in its initial disclosures but were known to plaintiff during his employment and were identified in the discovery process. These witnesses, then, will be permitted to testify. *See* Fed. R. Civ. P. 26(e)(1)(A). As to any other witness not identified in defendant's initial disclosures, the motion is retained under advisement and defendant's counsel must give opposing counsel and the court notice of defendant's intent to call any witness who was not disclosed under Rule 26(a) so that the court can rule on the objection in a timely fashion.

In his Motion in Limine No. 7, plaintiff seeks to preclude any mention of documents that were not disclosed pursuant to Rule 26 or in response to discovery. Defendant does not oppose the motion except to the extent it may seek to present documents for the purpose of rebuttal or impeachment. Defendant asserts that in the event such documents were not previously disclosed, it would raise the matter with the court and plaintiff's counsel before attempting to introduce them into evidence. The court believes that this approach is reasonable. Plaintiff's motion on this issue is granted in part and retained under advisement to the limited extent described by defendant.

In his Motion in Limine No. 10, plaintiff seeks to exclude allegations or claims made in trial pleadings. Defendant does not oppose the motion but reserves the right to utilize plaintiff's responses to interrogatories as evidence if necessary. The motion is granted. Interrogatory responses are not within the scope of the motion filed by plaintiff as they do not constitute "pleadings" in the case.

In his Motions in Limine Nos. 11 and 15, plaintiff seeks to exclude evidence designed to "impugn the integrity or motivations of plaintiff or plaintiff's counsel" and "improper character

evidence." Defendant does not oppose the motion, but clarifies that it may elicit testimony and present evidence challenging plaintiff's veracity and credibility regarding plaintiff's bias and motive regarding this lawsuit and evidence regarding plaintiff's conduct in the workplace that prompted defendant to make the decisions it did regarding plaintiff's employment. The court agrees that evidence concerning the integrity, motivations and conduct of plaintiff may be relevant and admissible so long as that evidence is tied to an issue in this case and is not a mere attack on character. This aspect of the motion, then, is denied without prejudice and plaintiff must raise a contemporaneous objection at trial.

In his Motion in Limine No. 17, plaintiff seeks to exclude evidence that plaintiff's counsel's wife is a practicing attorney in the Kansas City area. The motion is denied in part and retained under advisement in part. It is denied to the extent that defendant can disclose this fact during voir dire to determine whether jurors are familiar with her and to identify any potential biases or conflicts. Such evidence may otherwise be relevant and admissible at trial if defendant can link plaintiff's counsel's wife to contemporaneous acts in this case, but the motion is retained under advisement and will be resolved at trial in the context of a specific line of questioning presented to a witness. Defendant must notify the court and opposing counsel of its intention to proceed along those lines before doing so.

In defendant's Motion in Limine D, it seeks to exclude any evidence suggesting that plaintiff had not selected his retirement date on July 7, 2016. This is clearly a question of fact for the jury and the motion is denied. In defendant's Motion in Limine E, it seeks to exclude any opinion evidence regarding ultimate issues or legal conclusions, including testimony from witnesses as to what that witness might believe constitutes discrimination, harassment or

retaliation for purposes of the ADEA. The motion is granted but, as suggested by plaintiff, plaintiff may properly elicit testimony from defendant's managers about whether certain conduct conformed or did not conform with defendant's internal policies regarding discrimination, harassment and retaliation.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion in limine (doc. 65) is granted in part, denied in part and retained under advisement in part; and plaintiff's motion in limine (doc. 66) is granted in part, denied in part and retained under advisement in part.

**IT IS SO ORDERED.**

Dated this 10th day of January, 2020, at Kansas City, Kansas.

<u>John W. Lungstrum</u>
John W. Lungstrum
United States District Judge